| UNITED STATES DISTRICT COURT | EASTERN DISTRICT OF TEXAS |
|---|---|

| UNITED STATES OF AMERICA | § | |
|---|---|---|
| | § | |
| *versus* | § | CASE NO. 4:16-CR-142(1) |
| | § | |
| GUILLERMO ANTONIO CASTILLO | § | |

## MEMORANDUM AND ORDER

Pending before the court is Guillermo Antonio Castillo's ("Castillo") *pro se* Motion to Reduce Sentence (#117), wherein he requests that the court release him from imprisonment pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) due to his family circumstances, his rehabilitation, his immigration status, and the prison conditions created by the Coronavirus Disease 2019 ("COVID-19"). The Government filed a response in opposition. United States Probation and Pretrial Services ("Probation") recommends that the court deny Castillo's motion. Having considered the motion, the Government's response, Probation's recommendation, the record, and the applicable law, the court is of the opinion that Castillo's motion should be denied.

I.   Background

On October 13, 2016, a federal grand jury for the Eastern District of Texas returned a one-count Indictment charging Castillo and two codefendants with Conspiracy to Possess with the Intent to Manufacture and Distribute Methamphetamine, in violation of 21 U.S.C. § 846. On April 27, 2017, Castillo pleaded guilty to Count One of the Indictment. On August 18, 2017, Castillo was sentenced to 87 months' imprisonment, to be followed by two years of supervised release. Castillo remains in the custody of the Federal Bureau of Prisons at United States Penitentiary Atwater ("USP Atwater"), in Atwater, California. His projected release date is September 7, 2023.

II.     Analysis

On December 21, 2018, former President Trump signed the First Step Act of 2018 into law. *See* First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194. The Act, in part, amended 18 U.S.C. § 3582(c), which gives the court discretion, in certain circumstances, to reduce a defendant's term of imprisonment:

> (A) the court, upon motion of the Director of the Bureau of Prisons ("BOP"), or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
>     (i) extraordinary and compelling reasons warrant such a reduction; or
>
>     (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A). This provision is commonly referred to as "compassionate release."

A.     Exhaustion of Administrative Remedies

Prior to the First Step Act, only the Director of the BOP could file a motion seeking compassionate release. *See United States v. Franco*, 973 F.3d 465, 467 (5th Cir. 2020) ("Prior to the passage of the First Step Act . . . courts lacked the power to adjudicate motions for compassionate release."), *cert. denied*, 141 S. Ct. 920 (2020); *Tuozzo v. Shartle*, No. 13-4897,

2014 WL 806450, at *2 (D.N.J. Feb. 27, 2014) (denying petitioner's motion for compassionate release because no motion for his release was filed by the BOP). The First Step Act amended § 3582(c) by providing a defendant the means to appeal the BOP's decision not to file a motion for compassionate release on the defendant's behalf. *United States v. Cantu*, 423 F. Supp. 3d 345, 347 (S.D. Tex. 2019); *United States v. Bell*, No. 3:93-CR-302-M, 2019 WL 1531859, at *1 (N.D. Tex. Apr. 9, 2019). The plain language of the statute, however, makes it clear that the court may not grant a defendant's motion for compassionate release unless the defendant has complied with the administrative exhaustion requirement. 18 U.S.C. § 3582(c)(1)(A); *United States v. Garrett*, 15 F.4th 335, 337 (5th Cir. 2021) ("[T]o file a proper motion for compassionate release in the district court, a prisoner must first exhaust the available administrative avenues."); *Franco*, 973 F.3d at 467 (holding that the statutory requirement that a defendant file a request with the BOP before filing a motion for compassionate release in federal court "is *not* jurisdictional but that it *is* mandatory"); *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020) ("Even though [the] exhaustion requirement does not implicate [the court's] subject-matter jurisdiction, it remains a mandatory condition."); *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he exhaustion requirement . . . presents a glaring roadblock foreclosing compassionate release."). Thus, before seeking relief from the court, a defendant must first submit a request to the warden of his facility to move for compassionate release on his behalf and then either exhaust his administrative remedies or wait for the lapse of 30 days after the warden received the request. 18 U.S.C. § 3582(c)(1)(A); *Garrett*, 15 F. 4th at 338 ("[A]n inmate has two routes by which he may exhaust his administrative remedies. Both begin with 'requesting that the [BOP] bring a motion on the defendant's behalf.'" (quoting *Franco*, 973 F.3d at 467)); *United States v. Harris*, 812 F.

App'x 106, 107 (3d Cir. 2020); *United States v. Springer*, 820 F. App'x 788, 791 (10th Cir. 2020) (defendant "was required to request that the BOP file a compassionate-release motion on his behalf to initiate his administrative remedies" (citing *Raia*, 954 F.3d at 595)); *Alam*, 960 F.3d at 833-34; *United States v. Soliz*, No. 2:16-190-3, 2020 WL 2500127, at *3 (S.D. Tex. May 14, 2020) ("§ 3582(c)(1)(A) does not provide this Court with the equitable authority to excuse [defendant's] failure to exhaust his administrative remedies or to waive the 30-day waiting period." (quoting *United States v. Reeves*, No. 18-00294, 2020 WL 1816496, at *2 (W.D. La. Apr. 9, 2020))).

In this instance, Castillo is foreclosed from obtaining relief because he makes no showing that he submitted a request for compassionate release to the warden of the facility where he is housed. *United States v. Dodd*, No. 4:13-CR-182-SDJ, 2020 WL 7396527, at *2 (E.D. Tex. Dec. 17, 2020) (stating that "[i]n order to exhaust her administrative remedies, a prisoner must first present to the BOP the same grounds warranting release that the prisoner urges in her motion"); *see Franco*, 973 F.3d at 468 ("Congress has commanded that a 'court may not modify a term of imprisonment' if a defendant has not filed a request with the BOP."); *Alam*, 960 F.3d at 832 ("[B]ecause this exhaustion requirement serves valuable purposes (there is no other way to ensure an orderly processing of applications for early release) and because it is mandatory (there is no exception for some compassionate-release requests over others), we must enforce it."); *United States v. Garcia*, No. CR 2:18-1337, 2020 WL 3000528, at *3 (S.D. Tex. June 2, 2020) ("While the Court sympathizes with Defendant's plight, because he has failed to comply with the exhaustion requirements under § 3582, his motion is not ripe for review, and the Court is without jurisdiction to grant it."); *United States v. Garcia-Mora*, No. CR 18-00290-01, 2020 WL

2404912, at *2 (W.D. La. May 12, 2020) ("Section 3582(c)(1)(A) does not provide [the court] with the equitable authority to excuse [the defendant's] failure to exhaust his administrative remedies or to waive the 30-day waiting period."); *United States v. Collins*, No. CR 04-50170-04, 2020 WL 1929844, at *2 (W.D. La. Apr. 20, 2020); *see also Ross v. Blake*, 578 U.S. 632, 639 (2016) ("[J]udge-made exhaustion doctrines . . . remain amenable to judge-made exceptions," whereas "mandatory exhaustion statutes . . . establish mandatory exhaustion regimes, foreclosing judicial discretion."). Accordingly, at this time, the court does not have the authority to grant the relief Castillo requests. Moreover, even if Castillo had complied with the exhaustion requirement before filing the instant motion, nothing in his motion indicates that extraordinary and compelling reasons exist to reduce his sentence.

      B.    Criteria for Release

The United States Court of Appeals for the Fifth Circuit has held that when a defendant moves for compassionate release, he must establish three criteria. *United States v. Shkambi*, 993 F.3d 388, 392 (5th Cir. 2021). First, he must meet one of two conditions listed in § 3582(c)(1)(A)—either the defendant has extraordinary and compelling reasons that warrant a reduction under 18 U.S.C. § 3582(c)(1)(A)(i) or the defendant is at least 70 years of age, has served at least 30 years in prison, and meets the additional requirements of 18 U.S.C. § 3582(c)(1)(A)(ii). *Id.* at 391. Second, the defendant "must show that compassionate release is consistent with the applicable policy statements from the [United States Sentencing Commission ("Commission")]." *Id.* at 392. Third, the defendant "must convince the district judge to exercise

discretion to grant the motion after considering the § 3553(a) factors."[1]  *Id.*; *accord United States v. Keys*, 846 F. App'x 275, 276 (5th Cir.), *cert. denied*, 142 S. Ct. 299 (2021); *United States v. Cooper*, 996 F.3d 283, 287 (5th Cir. 2021).

Section 3582(c)(1)(A)(i) does not define the "extraordinary and compelling reasons" that may merit compassionate release.  Rather, Congress elected to delegate its authority to the Commission.  *See* 28 U.S.C. § 994(t) (directing the Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples"); *Cooper*, 996 F.3d at 287; *Shkambi*, 993 F.3d at 392.  Prior to the passage of the First Step Act, the Commission issued a policy statement set forth in U.S.S.G. § 1B1.13, which, along with its commentary, describes what reasons qualify as extraordinary and compelling.[2]  However, § 1B1.13 references only motions filed by "the Director of the [BOP]"—not an individual defendant.[3]  Consequently, the Fifth Circuit has held that when

---

[1] Section 3553(a) directs courts to consider:  the nature and circumstances of the offense and the defendant's history and characteristics; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable United States Sentencing Guideline ("U.S.S.G.") provisions and policy statements; any pertinent policy statement of the Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among similar defendants; and the need to provide restitution to the victim.  18 U.S.C. § 3553(a).

[2] In Application Note 1 to § 1B1.13 of the U.S.S.G., the Commission defined "extraordinary and compelling reasons" to include the following four categories of circumstances:  (i) certain medical conditions of the defendant; (ii) the defendant is 65 years or older and meets other requirements; (iii) the defendant's family has specified needs for a caregiver; and (iv) other reasons in the defendant's case that establish an extraordinary and compelling reason.  U.S.S.G. § 1B1.13 cmt. n.1.

[3] U.S.S.G. § 1B1.13 was last amended on November 1, 2018.  The Commission has, to date, been unable to amend § 1B1.13 to incorporate the changes wrought by the First Step Act due to the lack of a quorum.  The Commission consists of seven voting members and, per statute, requires four members for a quorum to amend the guidelines.  28 U.S.C. §§ 991(a), 994(a).  At present, the Commission has only one voting member.

a defendant files a motion for compassionate release on his own behalf, the Commission's policy statement set forth in § 1B1.13 is not applicable because that policy statement governs only motions filed by the Director of the BOP. *See Cooper*, 996 F.3d at 287-88; *Shkambi*, 993 F.3d at 392.

      Nevertheless, while recognizing that they are not binding, the court views the Commission's policy statement contained in § 1B1.13 and the commentary thereto as providing guidance regarding the types of reasons that may be deemed sufficiently "extraordinary and compelling" to warrant compassionate release. *See United States v. Thompson*, 984 F.3d 431, 433 (5th Cir.) ("Although not dispositive, the commentary to § 1B1.13 informs [the court's] analysis as to what reasons may be sufficiently 'extraordinary and compelling' to merit compassionate release."), *cert. denied*, 141 S. Ct. 2688 (2021); *United States v. Rivas*, 833 F. App'x 556, 558 (5th Cir. 2020) (upholding denial of compassionate release and recognizing that the court was guided in its analysis by the commentary to U.S.S.G. § 1B1.13). A review of dictionary definitions also sheds light on the meaning of these terms. The word "extraordinary" is defined as "going beyond what is usual, regular, or customary . . . exceptional to a very marked extent," whereas the word "compelling" is defined as "forceful . . . demanding attention . . . convincing." *Extraordinary*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2007); *Compelling*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2007); *see United States v. Mitchell*, No. 15-20609, 2021 WL 1827202, at *2 (E.D. Mich. May 7, 2021). "Courts have interpreted 'extraordinary' in the context of compassionate release as 'beyond what is usual, customary, regular, or common,' and a 'compelling reason' as 'one so great that irreparable harm or injustice would result if the relief is not granted.'" *Mitchell*, 2021 WL 1827202, at *2 (quoting *United*

*States v. Murphy*, No. 15-20411, 2020 WL 2507619, at *5 (E.D. Mich. May 15, 2020); *United States v. Sapp*, No. 14-20520, 2020 WL 515935, at *3 (E.D. Mich. Jan. 31, 2020)).

### 1. Family Circumstances

Castillo contends that his family circumstances present compelling reasons for a reduced sentence. As explained above, although the court is not bound by § 1B1.13 or the commentary thereto, the court views the commentary as informative of its analysis as to what reasons may be sufficiently extraordinary and compelling to merit compassionate release. *See Shkambi*, 993 F.3d at 392; *see also Thompson*, 984 F.3d at 433; *Rivas*, 833 F. App'x at 558. The U.S.S.G. acknowledge that extraordinary and compelling reasons may exist with respect to a defendant's family circumstances, under the following conditions: (i) "[t]he death or incapacitation of the caregiver of the defendant's minor child or minor children" or (ii) "[t]he incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." U.S.S.G. § 1B1.13 cmt. n.1(C)(i)-(ii). Here, Castillo asserts that his family needs his leadership as well as his financial support. He claims to be a valuable asset to his family—his daughter, mother, and brothers—failing to mention his sisters or to provide the name of his daughter. According to his Presentence Investigation Report ("PSR"), prepared on June 14, 2017, Castillo had a child with Paola Bravo ("Bravo"), a Mexican citizen, but he did not know the child's name. Bravo purportedly was extremely jealous after accusing him of infidelity and kept the child away from him. The PSR reflects that Castillo was charged with assault family/impeding breath/circulation after he grabbed Bravo by the throat with both hands and squeezed for approximately 30 to 40 seconds when she was pregnant with the child,

causing her difficulty breathing, pain in her throat, coughing, dizziness, and a fear that she was going to die.

Additionally, Castillo's desire to support his family financially and to be a good role model does not constitute an extraordinary and compelling reason warranting compassionate release. *See United States v. Silverlight*, No. 4:12-CR-201-YGR, 2021 WL 1736864, at *3 (N.D. Cal. May 3, 2021) (holding that defendant's arguments for "release to care for members of her family [including her minor children] do not rise to the level of 'extraordinary and compelling' circumstances warranting reduction of her sentence"); *United States v. Francisco-Ovalle*, No. 18-CR-526-AJN, 2021 WL 123366, at *3 (S.D.N.Y. Jan. 13, 2021) ("Defendant's desire to provide financial support for his family, while . . . admirable, applies broadly to incarcerated persons and does not in itself provide extraordinary and compelling reasons justifying release."); *United States v. Goldberg*, No. CR 12-180 (BAH), 2020 WL 1853298, at *4 (D.D.C. Apr. 13, 2020) (noting that a desire to care for one's elderly parents does not constitute an extraordinary and compelling reason because "[m]any, if not all inmates, have aging and sick parents." (quoting *United States v. Ingram*, No. 2:14-cr-40, 2019 WL 3162305, at *2 (S.D. Ohio July 16, 2019))).

Castillo also maintains that he suffers from substantial fear and anxiety due to the knowledge that his daughter does not have a parent by her side. Castillo, however, does not claim that his minor daughter is in need of a caregiver, nor does he elaborate on the whereabouts of the child or her mother. He does not assert that the child's mother is deceased or incapacitated. Hence, Castillo has not demonstrated that he is the only available caregiver for the child, as his mother and sister both reside in the Dallas area. *See United States v. Jackson,* No. CR 6:17-73-HMH, 2020 WL 6110998, at *2 (D.S.C. Oct. 16, 2020) (denying compassionate release

for family circumstances where the caregiver of defendant's minor children passed away but the children were being cared for by a relative); *accord United States v. White*, No. 16-40, 2021 WL 1721016, at *4 (E.D. La. Apr. 30, 2021) (denying compassionate release despite defendant's daughter being under his sole legal custody because defendant failed to demonstrate that his daughter's current caregiver, his mother, whom he claimed was battling cancer, was incapacitated); *United States v. Alvarez*, No. CR 2:18-298, 2021 WL 1270494, at *4 (S.D. Tex. Apr. 6, 2021) (denying compassionate release on the basis of family circumstances, where defendant was managing conservator of his 12-year-old daughter but "failed to offer any evidence in support of his claim that his parents are incapacitated, or that he has no other family member capable of caring for his daughter"); *United States v. Bowyer*, No. 16-96, 2020 WL 5942195, at *2 (E.D. La. Oct. 7, 2020) (denying compassionate release because the defendant did not allege that the mother of his child was the only available caregiver); *United States v. Ellis*, No. 15-124, 2020 WL 5073562, at *3 (E.D. La. Aug. 26, 2020) (denying compassionate release despite a showing that the mother and caregiver of the defendant's child suffered from multiple illnesses because the defendant had failed to demonstrate that those illnesses incapacitated the caregiver); *see also United States v. Phillips*, No. 13-286, 2021 WL 4476819, at *4 (E.D. La. Sep. 30, 2021) (denying compassionate release and remarking that defendant had provided no evidence that he was the only person who could care for his parents where the record reflected that at one time he had several siblings in the area); *United States v. Shabazz*, Crim. Action No. 17-43 (JDB), 2021 WL 4306129, at *3 (D.D.C. Sept. 22, 2021) (denying compassionate release where the defendant had not shown that he was the only available caregiver for his elderly mother, that his release was the only option for his mother's care, or that his situation was so rare as to qualify as

"extraordinary"); *United States v. Crandle*, No. 10-35, 2020 WL 2188865, at *4 (M.D. La. May 6, 2020) (denying request for relief and noting that "the court has before it no information as to why other relatives cannot care for [the defendant's] parents"). Hence, Castillo's family circumstances do not amount to extraordinary and compelling reasons for early release from prison.

2. Rehabilitation

Castillo maintains that his post-sentence rehabilitation, evidenced by the courses he has taken, his status as a mentor to other inmates, and the fact that individuals are less likely to recidivate as they get older, establishes extraordinary and compelling reasons for compassionate release. Probation notes that Castillo claims that he is furthering his education and pursuing a degree. While the court may consider rehabilitation efforts, "[rehabilitation] of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t); *see Shkambi*, 993 F.3d at 392; *United States v. Brooker*, 976 F.3d 228, 237-38 (2d Cir. 2020) (holding that a district court's discretion in sentencing is broad; however, there is a "statutory limit on what a court may consider to be extraordinary and compelling . . . [and] '[r]ehabilitation . . . alone shall not be considered an extraordinary and compelling reason.'" (quoting 28 U.S.C. § 994(t))); *United States v. Hudec,* No. CR 4:91-1-1, 2020 WL 4925675, at *5 (S.D. Tex. Aug. 19, 2020) ("While the Court is permitted to consider post-sentencing rehabilitation in determining whether to grant an eligible defendant a sentence reduction, it is not authorized to grant a reduction based upon post-sentencing rehabilitation alone."). In fact, "[m]aking good use of one's time in prison is not uncommon, and indeed is expected." *United States v. Blanco*, No. 16-CR-408 (CS), 2021 WL 706981, at *2 (S.D.N.Y. Feb. 22, 2021) (quoting *United States v. Alvarez*, No. 89-CR-

11

229, 2020 WL 4904586, at *7 (E.D.N.Y. Aug. 20, 2020)). While Castillo maintains that his age decreases the likelihood that he will recidivate, the court notes that he is only 28 years old. Additionally, Castillo has committed a number of disciplinary violations throughout his incarceration. Specifically, he was disciplined in 2019 for possessing a hazardous tool and destroying/disposing of an item during a search, in 2020 for bribing a staff member, fighting another person, and self-mutilation, and in 2021 for fighting another person and two instances of assault involving striking others with a closed fist and kicking to head and upper torso. As a result, he lost good conduct time credit as well as commissary, visitation, email, and phone privileges. Therefore, Castillo's disciplinary record undermines his claims of rehabilitation. Moreover, Castillo was assessed as posing a high risk of recidivism on August 5, 2021.

Further, while Castillo claims that he will be deported to Nicaragua upon his release from custody, the Seventh Circuit has found a similar argument not to be extraordinary and compelling. *See United States v. Ugbah*, 4 F.4th 595, 597 (7th Cir. 2021) (rejecting compassionate release of a Nigerian prisoner reasoning that his removal to Nigeria "was known from the outset and played a role in setting the original sentence"). Hence, Castillo's immigration status does not warrant a reduced sentence.

Thus, although Castillo lists a number of commendable achievements and laudable goals, he has not presented sufficiently extraordinary and compelling accomplishments or circumstances to merit compassionate release under the facts of this case. *See United States v. Lewis*, No. 17-CR-28-FPG, 2021 WL 4519795, at *3 (W.D.N.Y. Oct. 4, 2021) (finding defendant's efforts at rehabilitation and plans to start a new life elsewhere to be commendable and recognizing the unusual burdens he faced in prison but finding those considerations not to undermine the factors

that led to his original sentence—his offense, his criminal history, and the need for deterrence); *United States v. Boyd*, No. 3:17-CR-37-TAV-DCP-4, 2021 WL 5094903, at *4 (E.D. Tenn. Nov. 2, 2021) (the court, while recognizing defendant's efforts to improve himself, did not find his rehabilitation efforts to be so extraordinary as to outweigh the other sentencing factors); *United States v. Willsey*, No. 3:00-cr-00438-HZ, 2021 WL 4462889, at *2 (D. Ore. Sept. 28, 2021) (although finding defendant's steps toward rehabilitation to be laudable, the court ruled that they did not present an extraordinary circumstance that would justify compassionate release, particularly given the seriousness of his offenses of conviction); *United States v. Rounds*, No. 10-CR-239S (2), 2021 WL 4437170, at *4 (W.D.N.Y. Sept. 28, 2021) (commenting that defendant's efforts at rehabilitating himself were laudable and should be continued, but concluding that they did not alone or in combination with his other arguments constitute an extraordinary and compelling reason for compassionate release). Similarly, the court hopes that Castillo will continue on the path to rehabilitation, but declines to exercise its discretionary authority under § 3582 at this time based on his rehabilitation efforts. *See Lewis*, 2021 WL 4519795, at *3.

### 3. COVID-19

Castillo further argues that the COVID-19 outbreak and the resulting preventive measures taken within his facility create harsh imprisonment conditions because his access to important mental health and rehabilitative programs has been foreclosed. Castillo fails to recognize, however, that COVID-19 has disrupted everyone's daily routines and limited their opportunities, both inside and outside of prison. Nonetheless, when ruling on a motion for compassionate release, "the Court must consider every prisoner individually and should be cautious about making blanket pronouncements." *United States v. Chavez,* No. 3:18-CR-0426-B-11, 2020 WL 4500633,

at *3 (N.D. Tex. Aug. 5, 2020) (quoting *United States v. Delgado*, No. 3:17-CR-242-B (01), 2020 WL 2542624, at *3 (N.D. Tex. May 19, 2020)); *see Mitchell*, 2021 WL 1827202, at *2; *United States v. Ashley*, No. CR 17-00282-KD-B-1, 2020 WL 7771215, at *4 (S.D. Ala. Dec. 30, 2020) (holding that, in considering a motion for compassionate release, the court must take an "individualized and particularized review" of the defendant's characteristics (citing *United States v. Tobias*, No. CR 19-143 (BAH), 2020 WL 4673414, at *5 (D.D.C. Aug. 12, 2020); *United States v. Brown*, No. 13-CR-00030 (ESH), 2020 WL 4346911, at *3 (D.D.C. July 29, 2020); *United States v. Joaseus*, No. 9:16-CR-80011-ROSENBERG, 2020 WL 3895087, at *2 (S.D. Fla. July 10, 2020))).

Furthermore, in an attempt to keep inmates and staff safe, the BOP has modified its operations depending on the operational level of the institution. Currently, "[i]nstitutions determine their operational level (Level 1, Level 2, or Level 3) based on the facilities' COVID-19 medical isolation rate, combined percentage of staff and inmate completed vaccinations series, and their respective community transmission rates."[4] According to the BOP's website, the "BOP recognizes the importance for inmates to maintain relationships with friends and family. During modified operations in response to COVID-19, the BOP suspended social visitation, however, inmates were afforded 500 (vs. 300) telephone minutes per month at no charge to help compensate for the suspension of social visits." Moreover, the BOP has modified its operations to allow

---

[4] According to the BOP, Level 1 requires a medical isolation rate of less than 2%, a facility vaccination rate of greater than or equal to 65%, and a community transmission rate of less than 50 per 100,000 over the last seven days; Level 2 requires a medical isolation rate of 2% to less than 7%, a facility vaccination rate of 50% to less than 65%, and a community transmission rate of 50 to 99 per 100,000 over the last seven days; and Level 3 requires a medical isolation rate of greater than or equal to 7%, a facility vaccination rate of less than 50%, and a community transmission rate of greater than or equal to 100 per 100,000 over the last seven days.

"[i]nstitutions with active COVID-19 cases [to] make exceptions to . . . programming requirements for the safety of inmates and staff." Additionally, under Level 3 Operations, USP Atwater's current operational level, "inmates are limited in their movements to prevent congregate gathering and maximize social distancing"; however, "inmate movement in small numbers is authorized for the following purposes: commissary, laundry, showers three times each week, and telephone."

Nevertheless, "[w]ith respect to motions for compassionate release based on COVID-19, 'the conditions of confinement in jail, alone, are not sufficient grounds to justify a finding of extraordinary and compelling circumstances. Rather, those circumstances are applicable to all inmates who are currently imprisoned and hence are not unique to any one person.'" *United States v. Iruegas*, No. CR 2:18-366, 2021 WL 1169348, at *2 (S.D. Tex. Mar. 25, 2021) (quoting *United States v. Koons*, 455 F. Supp. 3d 285, 291 (W.D. La. 2020)); *accord Mitchell*, 2021 WL 1827202, at *2 ("[T]he conditions that affect all inmates at [Defendant's facility], regardless of their health, age, and family circumstances, do not warrant the extraordinary remedy of compassionate release for Defendant individually."); *United States v. Dodge*, No. CR 17-323-01, 2020 WL 3668765, at *5 (W.D. La. July 6, 2020) ("The Court stresses that the rampant spread of the coronavirus and the conditions of confinement in jail, alone, are not sufficient grounds to justify a finding of extraordinary and compelling circumstances. Rather, those circumstances are applicable to all inmates who are currently imprisoned and hence are not unique to any one person."); *see also United States v. Cruz-Cruz*, No. CR13-49RSL, 2021 WL 1968389, at *4 (W.D. Wash. May 17, 2021*)* ("Defendant's allegations regarding general conditions of confinement, coupled with vague allegations of COVID-19 exposure and damage to mental health,

are insufficient to establish extraordinary and compelling reasons exist."); *United States v. Wright*, No. 17-CR-0301, 2020 WL 7334412, at *5 (D. Minn. Dec. 14, 2020) ("It is undisputed that the BOP has implemented numerous measures to prevent and mitigate COVID-19 outbreaks within its facilities."). The safety measures that have been implemented benefit Castillo, other inmates, and BOP staff members during the pandemic. In fact, as of July 7, 2022, the figures at www.bop.gov list 0 inmates (out of an inmate population of 1,083) and 0 staff members at USP Atwater as having confirmed positive cases of COVID-19, as well as 405 inmates and 120 staff members who have recovered. Thus it appears that the facility where Castillo is housed is handling the outbreak appropriately and providing adequate medical care. The consequential inconveniences presented by the BOP's modified operations on Castillo's daily activities do not create an extraordinary and compelling reason to reduce his sentence.

    C.    <u>Section 3553(a) Factors</u>

The court further finds that compassionate release is not merited in light of the applicable factors set forth in 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A) (requiring courts to consider the § 3553(a) factors before granting compassionate release); *United States v. Shorter*, 850 F. App'x 327, 328 (5th Cir. 2021) (finding that the court did not abuse its discretion in denying compassionate release after balancing the § 3553(a) factors); *Keys*, 846 F. App'x at 276; *Shkambi*, 993 F.3d at 392; *Thompson*, 984 F.3d at 435 n.11 (collecting cases); *Chambliss*, 948 F.3d at 693-94.

Castillo's offense of conviction stems from his participation in a conspiracy to possess with the intent to manufacture and distribute methamphetamine. Castillo's role in the conspiracy was discovered during the course of an undercover operation. In April 2016, the United States Drug

16

Enforcement Administration ("DEA") learned of a local disc jockey's connection to a known drug dealer, Castillo's codefendant Kevin Reyes ("Reyes"). An undercover agent used the connection to set up a controlled purchase of methamphetamine from Reyes. On October 6, 2016, the agent met with Reyes to complete the transaction. Castillo was driving a vehicle in which Reyes and codefendant Jesus Escuarda-Gutierrez ("Escuarda-Gutierrez") were passengers. The agent asked to see the methamphetamine and Castillo retrieved the substance from Escuarda-Gutierrez and showed it to the agent. The agent then gave the signal to DEA agents nearby to arrest the defendants. Castillo attempted to drive away and evade the officers, but he was ultimately stopped and arrested by deputies with the Denton, Texas, Sheriff's Office.

According to his Presentence Investigation Report, Castillo has a history of abusing alcohol, marijuana, crack cocaine, and methamphetamine. Granting Castillo's compassionate release would fail to provide just punishment for his offense and promote respect for the law. "Compassionate release is discretionary, not mandatory, and [may] be refused after weighing the sentencing factors of 18 U.S.C. § 3553(a)." *United States v. Chambliss*, 948 F.3d 691, 693 (5th Cir. 2020); *see United States v. Gharib*, No. 21-40779, 2022 WL 1565352, at *1 (5th Cir. May 18, 2022). In view of the nature and circumstances of his offense of conviction, his history of substance abuse, his history of disciplinary violations while in BOP custody, and his high risk for recidivism, the court cannot conclude that Castillo's early release from prison would afford adequate deterrence or protect the public, as he continues to pose a danger to other persons and to the community as a whole.

III.	Conclusion

In sum, Castillo has failed to satisfy his burden of showing the necessary circumstances to warrant relief under the statutory framework to which the court must adhere. *See United States v. Dodge*, No. 17-323-01, 2020 WL 3668765, at *5 (W.D. La. July 6, 2020) (stressing that "the rampant spread of the coronavirus and the conditions of confinement in jail, alone, are not sufficient grounds to justify a finding of extraordinary and compelling circumstances"); *Koons*, 455 F. Supp. 3d at 291-92 (same). As the court observed in *Koons*, rejecting the notion that it has "carte blanche" authority to release whomever it chooses, "[t]he Court cannot release every prisoner at risk of contracting COVID-19 because the Court would then be obligated to release every prisoner." *Dodge*, 2020 WL 3668765, at *6; *Koons*, 455 F. Supp. 3d at 292. Accordingly, Castillo's *pro se* Motion to Reduce Sentence (#117) is DENIED.

SIGNED at Beaumont, Texas, this 13th day of July, 2022.

_____
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE